**SCENIC GALVESTON, INC.**

v.

**INFINITY OUTDOOR, INC.**

Civ.A. No. G–00–751.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 30, 2001.

---

### AMENDED ORDER DENYING DE-FENDANT'S MOTION TO ALTER OR AMEND AND DISMISSING DE-FENDANT'S COUNTERCLAIM

KENT, District Judge.

Plaintiff brought this declaratory judgment action seeking a determination that Defendant exercised its right under a billboard contract to terminate the agreement. In a previous Order, dated July 23, 2001, the Court Granted Plaintiff's Motion for Summary Judgment. Now before the Court is Defendant's Rule 59(e) Motion to Alter or Amend. For the reasons stated below, Defendant's Motion is **DENIED** and Defendant's Counterclaim is **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION.**

### I. BACKGROUND

Defendant was the lessee of outdoor billboard sites on Plaintiff's property. Plaintiff brought a declaratory judgment action seeking a judicial declaration that Defendant had exercised its option, under the contract, to terminate the lease. On July 24, 2001, the Court Granted Plaintiff's Motion for Summary Judgment. *Scenic Galveston, Inc. v. Infinity Outdoor, Inc.,* 2001 WL 848785 (S.D.Tex. July 24, 2001). Defendant now asks the Court to reconsider its decision and alter its Order by denying Plaintiff's Motion for Summary Judgment.

### II. ANALYSIS

Defendant argues that in Granting Plaintiff's Motion for Summary Judgment, the Court erred in several respects. Defendant argues that the Court misunderstood its arguments, applied incorrect legal standards, and failed to draw all inferences in favor of Defendant. The Court disagrees, but will addresses some of Defendant's objections in an effort to make the Court's reasoning as perspicuous as possible.

First, Defendant argues that the Court erred in viewing the determinative issue as one of contract construction. It asserts that it did not dispute the fact that the lease could not be partially terminated. The issue of contract construction, however, though not determinative by itself, is relevant. As the Court's previous Order notes, the fact that the lease did not admit of partial termination provides the context in which to view Defendant's letter, which stated "we are hereby terminating our lease with you and no future rent payments will be made." See *Id.* at *4. This statement has only one reasonable interpretation, that Defendant intended to terminate the lease in its entirety. This conclusion is further strengthened if the lease did not even admit of partial termination.

Second, Defendant complains that the Court considered only one piece of evidence in reaching its decision (the letter). In response, the Court notes that this evidence, though singular, is dispositive on the issue. There is no rule requiring more than one piece of evidence for summary judgment to lie. The one piece of evidence here is an unambiguous, unequivocal statement by Defendant terminating the lease. Moreover, the Court did not ignore the other evidence. As the Court ruled, Defendant's letter served to immediately terminate the contract. *See id.; see also Pitman v. Sanditen,* 626 S.W.2d 496, 498

(Tex.1981) (noting that upon exercise of an option, a binding, bilateral contract is formed). Thus, the other evidence, later payment of a lesser rent amount and acceptance thereof, must be viewed as an attempt at resurrecting the contract or at creating a new one. *Id.* Because of the statute of frauds, this additional evidence is simply insufficient to demonstrate such, even viewed in the light most favorable to the Defendant. These two checks did not state that the old contract was reinstated or a new contract formed; thus they cannot satisfy the writing requirement. The Court's statement in a footnote of the previous Order that the subsequent checks were cashed accidently is thus not a factual determination by the Court, but dicta. In the alternative, it provides a basis for concluding that there is insufficient evidence to support an inference that the parties did not intend to terminate the contract.

 Next, Defendant claims that the Court erred by applying the rules contract interpretation to the question of contract termination. In Defendant's view, the Court should have considered cases discussing the standards for contract termination, which would require that Defendant "show a fixed intention to abandon, renounce, and refuse to perform under the contract." *See Group Life & Health Ins. Co. v. Turner,* 620 S.W.2d 670, 673 (Tex. App.—Dallas 1981, no writ). These, standards apply, however, when one or both parties are claimed to have simply walked away from the contract. Here, by contrast, the contract itself contained an option to terminate upon the happening of a condition subsequent. Whether one party has exercised its option to terminate is more akin to the law of offer and acceptance than the law of termination. After all, parties to a contract may reach a subsequent agreement or contract to terminate the first contract. The option to terminate can be viewed as an offer to rescind the contract, activated upon the happening of a certain condition, which Defendant accepted when it sent its letter stating as much. *Cf. Texas Gas Util. Co. v. Barrett,* 460 S.W.2d 409, 414 (Tex.1970) ("[P]arties may rescind their contract by mutual agreement ... expressions of assent are usually in the form of an offer by one and an acceptance by the other."); *Moser Co. v. Awalt Indus. Prop., Inc.,* 584 S.W.2d 902, 906 (Tex.App.—Amarillo 1979, no writ) ("Usually recision is expressed in the form of an offer by one and an acceptance by the other.").

Next, Defendant argues that the Court erred by holding that Plaintiff's organizational purpose to eliminate billboards is irrelevant. Defendant's briefs, however, refer to this evidence merely as a roundabout way of showing that Plaintiff knew that only one additional billboard was lost. The Court's point was simply that Plaintiff's knowledge of the number of signs lost is not probative of anything. The lease, by its terms, allows for total termination for the loss of as little as one sign. Defendant now argues that Plaintiff's organizational purpose demonstrates that Plaintiff's "understanding" that the Defendant intended to terminate was pretextual. The key question, however, is what it would be reasonable for Plaintiff to conclude from Defendant's letter. Plaintiff's own motivations are irrelevant. Moreover, even if the Court were to consider such evidence, it would only strengthen the conclusion that Defendant's letter could only reasonably be viewed as cancelling the entire lease. If Defendant knew that Plaintiff was looking for any attempt to evade the lease, then Defendant had every reason to expect that its unqualified statement terminating the lease would be taken at face value. Conversely, Plaintiff, given its disclosed goals, would reasonably con-

clude that Defendant would not have made such an unqualified statement if it did not truly intend to terminate the lease in toto. Plaintiff's organizational purpose, if anything, undermines Defendant's claim that the parties were working under a conscious understanding that the lease continued to remain in effect. There is no inference favorable to Defendant to be drawn from this fact.

■ Finally, Defendant argues that the Court erred in entering a Final Judgment while Defendant had a counterclaim on file that was not addressed in Plaintiff's Motion for Summary Judgment. Defendant's argument is well taken, and the Court appreciates Defendant's having brought this issue to the Court's attention. Defendant's counterclaim is for breach of contract. Defendant alleges that Plaintiff, in contravention of the lease, dug channels around some of Defendant's billboards. These trenches have allegedly deprived Defendant of access to the billboards and weakened the signs' supports. In addition, Defendant contends that Plaintiff is in the process of digging similar channels around other billboards belonging to Defendant. Defendant asks for damages "in an amount necessary to correct the access and structural weakening issues caused by the actions of Scenic Galveston." In addition, Defendant seeks an injunction to prevent Defendant from engaging in similar future anti-billboard tactics.

■ Defendant's counterclaim does not appear to have an independent basis of jurisdiction. Thus, the Court has only supplemental jurisdiction over the counterclaim. *See* 28 U.S.C. § 1367(a). Section 1367(c)(3), which allows the Court to decline supplemental jurisdiction when the Court has dismissed all claims over which it has original jurisdiction, is facially inapplicable. The Court Granted Plaintiff's Motion for Summary Judgment, and thus Plaintiff's claim was not technically dismissed. Rather, Judgment will be entered for the Plaintiff. The Court however, concludes that 1367(c)(3) includes any situation where the jurisdiction conferring claim has been resolved. *Baker v. Farmers Elec. Coop., Inc.*, 34 F.3d 274, 283 (5th Cir.1994) (using the phrase "dismissed or rendered moot"); *Wexley v. Michigan State Univ.*, 821 F.Supp. 479, 487 (W.D.Mich.1993) (noting that the Court may decline to exercise supplemental jurisdiction when the sole premises for federal subject matter jurisdiction is "extinguished"). Accordingly, Defendant's Counterclaim is **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION.** Defendant is free to refile their claim in an appropriate forum if it feels that its claim is somehow still viable, even in light of the Court's ruling on Plaintiff's claim.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion to Alter or Amend is **DENIED.** Moreover, Defendant's Counterclaim is **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION.** Concurrent herewith, the Court will enter an Amended Final Judgment in the Matter. Each side is to bear its own costs in the matter incurred herein to date.

**IT IS SO ORDERED.**